## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BNSF RAILWAY COMPANY; CIMARRON VALLEY RAILROAD, LC; KANSAS & OKLAHOMA RAILROAD, L.L.C.; KANSAS CITY TERMINAL RAILWAY COMPANY; KYLE RAILROAD COMPANY; NEBRASKA, KANSAS & COLORADO RAILNET; NORFOLK SOUTHERN RAILWAY COMPANY; SOUTH KANSAS & OKLAHOMA RAILROAD, L.L.C.; THE KANSAS CITY SOUTHERN RAILWAY COMPANY; THE ST. JOSEPH & GRAND ISLAND RAILWAY COMPANY; UNION PACIFIC/ MISSOURI PACIFIC RAILROAD COMPANY; and WICHITA UNION TERMINAL RAILWAY COMPANY )))))))))))))) | |
| Plaintiffs, )) | CIVIL ACTION |
| ) | NO. _____ |
| vs. )) | |
| MARK A. BURGHART, SECRETARY OF REVENUE OF THE STATE OF KANSAS and DAVID N. HARPER, DIRECTOR, DIVISION OF PROPERTY VALUATION OF THE DEPARTMENT OF REVENUE OF THE STATE OF KANSAS, )))))) | |
| Defendants. ))) | |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1.      This is a civil action seeking to restrain and enjoin defendants, and those acting in concert and participating with them, from assessing, levying or collecting certain ad valorem taxes from the plaintiffs for the 2020 assessment year, to the extent that such taxes are discriminatory and unlawful under Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976,

Pub. L. No. 94-210, 90 Stat. 54 (February 5, 1976), formerly codified as 49 U.S.C. Sec. 11503, and currently codified as 49 U.S.C. Sec. 11501 and referred to herein as "Section 306". Plaintiffs also seek a declaratory judgment pursuant to 28 U.S.C. Sec. 2201 that defendants' proposed assessments on plaintiffs' property for the 2020 assessment year, and the levy and collection of ad valorem taxes based upon such assessments, violate Section 306.

## JURISDICTION

2.     Jurisdiction of this Court is based upon the following grounds:

a.     Section 306(2), which confers jurisdiction upon district courts of the United States (notwithstanding 28 U.S.C. Sec. 1341 and without regard to amount in controversy or citizenship of the parties) to prevent a state, subdivision of a state, or any authority acting for a state or subdivision of a state, from levying or collecting ad valorem taxes that result in discriminatory treatment of common carriers by rail;

b.     28 U.S.C. Sec. 1337 (as more fully appears herein, this action arises under an act of Congress regulating commerce); and,

c.     28 U.S.C. Sec. 1331 (as more fully appears herein, this action arises under the United States Constitution, Article I, Sec. 8, cl. 3 [commerce clause], as well as Amendment 14, Sec. 1 [equal protection] and presents a federal question).

## VENUE

3.     Plaintiffs' tax discrimination claims arise in this district and defendants maintain their official residence in this district. Venue is, therefore, proper in this Court under 28 U.S.C. Sec. 1391(b).

## PARTIES

4.      Plaintiff, BNSF Railway Company ("BNSF"), a Delaware corporation, is engaged in interstate commerce as a common carrier by rail and operates in the following counties in the State of Kansas:  Atchison, Barber, Bourbon, Butler, Chase, Cherokee, Clark, Clay, Cloud, Coffey, Cowley, Crawford, Dickinson, Doniphan, Douglas, Edwards, Finney, Ford, Franklin, Gray, Hamilton, Harper, Harvey, Jefferson, Jewell, Johnson, Kearny, Kiowa, Leavenworth, Linn, Lyon, Marion, McPherson, Meade, Miami, Morris, Osage, Ottawa, Pawnee, Pratt, Reno, Republic, Sedgwick, Seward, Shawnee, Stafford, Sumner, Wabaunsee and Wyandotte.

5.      Plaintiff, Cimarron Valley Railroad, L.C., ("Cimarron Valley"), a Utah limited liability company, is engaged in interstate commerce as a common carrier by rail and operates in the following counties in the State of Kansas:  Ford, Grant, Gray, Haskell, Morton, Stanton, and Stevens.

6.      Plaintiff, Kansas & Oklahoma Railroad, L.L.C. ("K&O"), a Kansas limited liability company, is engaged in interstate commerce as a common carrier by rail and operates in the following counties in the State of Kansas: Barber, Barton,  Dickinson, Ellsworth, Greeley, Harper, Harvey, Hodgeman, Kingman, Lane, Lincoln, McPherson, Mitchell, Ness, Osborne, Pawnee, Pratt, Reno, Rice, Rush, Saline, Scott, Sedgwick and Sumner.

7.      Plaintiff, Kansas City Terminal Railway Company ("KCTR"), a Missouri corporation, is engaged in interstate commerce as a common carrier by rail and operates in Wyandotte County, Kansas.

8.      Plaintiff, Kyle Railroad Company ("Kyle"), a Kansas corporation, is engaged in interstate commerce as a common carrier by rail and operates in the following counties in the State of Kansas:  Cloud, Decatur, Dickinson, Jewell, Mitchell, Norton, Osborne, Ottawa, Phillips, Republic, Saline, Sheridan, Sherman, Smith and Thomas.

9.      Plaintiff, Nebraska, Kansas & Colorado Railnet ("NK&CR"), a Delaware corporation, is engaged in interstate commerce as a common carrier by rail and operates in the

following counties in the State of Kansas:  Cheyenne, Decatur, Norton, Phillips and Rawlins.

10.     Plaintiff, Norfolk Southern Railway Company ("Norfolk"), a Virginia corporation, is engaged in interstate commerce as a common carrier by rail and operates in the Kansas county of Wyandotte.

11.     Plaintiff, South Kansas & Oklahoma Railroad, L.L.C. ("SK&OK"), a Kansas limited liability company, is engaged in interstate commerce as a common carrier by rail and operates in the following counties of the State of Kansas:  Allen, Cherokee, Cowley, Crawford, Elk, Labette, Montgomery, Neosho, Sumner and Wilson.

12.     Plaintiff, The Kansas City Southern Railway Company ("KCS"), a Missouri corporation, is engaged in interstate commerce as a common carrier by rail and operates in the following counties of the State of Kansas:  Cherokee, Crawford, Miami and Wyandotte.

13.     Plaintiff, St. Joseph & Grand Island Railway Company ("SJ&GR"), a Kansas corporation, is engaged in interstate commerce as a common carrier by rail and operates in the following counties in the State of Kansas:  Brown, Doniphan, Marshall, Nemaha and Washington.

14.     Plaintiff, Union Pacific Railroad Company ("UP"), a Delaware corporation, is engaged in interstate commerce as a common carrier by rail and operates in the following counties of the State of Kansas:  Allen, Anderson, Atchison, Brown, Butler, Chase, Clark, Coffey, Cowley, Dickinson, Doniphan, Douglas, Ellis, Ellsworth, Ford, Franklin, Geary, Gove, Harvey, Jackson, Jefferson, Johnson, Kiowa, Labette, Leavenworth, Linn, Logan, Lyon, Marion, Marshall, McPherson, Meade, Miami, Montgomery, Morris, Nemaha, Neosho, Osage, Ottawa, Pottowatomie, Pratt, Reno, Riley, Rooks, Russell, Saline, Sedgwick, Seward, Shawnee, Sumner, Thomas, Trego, Wabaunsee, Wallace, Washington, Wilson, Woodson, and Wyandotte.

15.     Plaintiff, Wichita Union Terminal Railway Company ("WUTR"), a Kansas corporation, is engaged in interstate commerce as a common carrier by rail and operates in Sedgwick County, Kansas.

16.     Defendant Mark A. Burghart is the Secretary of the Department of Revenue of the

State of Kansas ("Secretary") and maintains his principal office at the Mills Building, 901 S. Kansas Avenue, Topeka, Kansas.

17.     Defendant, David N. Harper, is the Director of the Division of Property Valuation of the Department of Revenue of the State of Kansas ("Director") and maintains his principal office at the 300 SW 29th Street, Topeka, Kansas.

18.     The Secretary is responsible for the operations of the Department and exercises general supervision and control over the administration of the revenue laws of the State of Kansas. The Director is subordinate to the Secretary and responsible for the appraisal and assessment of railroad property for ad valorem tax purposes.

## AD VALOREM TAXATION IN KANSAS

19.     Under K.S.A. 79-1439, all real and tangible personal property subject to general ad valorem taxation in Kansas must be appraised uniformly and equally as to class and, unless otherwise required by statute, must be appraised at its fair market value.

20.     Under K.S.A. 79-5a01(a)(1), railroads and railroad corporations are defined and classified for ad valorem tax purposes as "public utilities".

21.     Under K.S.A. 79-5a04, the Director is required to determine annually the fair market value of public utility property, both real and personal, tangible and intangible.  In determining the fair market value of public utility property, the Director is required, where practicable, to use the "unit" method of valuation and to determine the unit value allocated to Kansas.

22.     Under K.S.A. 79-5a26, the Director is required to apportion the assessed valuation of railroad property to the various counties and taxing units in which such property is located.

23.     Under K.S.A. 79-5a27, the Director is required to certify apportioned assessed valuations of railroad and public utility property to the county clerk of each county in which such property is located on or before June 1st of each year.

24.     The taxable real and personal property of all taxpayers who are not classified as

"public utilities" under Kansas law is appraised and assessed for ad valorem tax purposes by officials of the county or district in which such property is located.

**SECTION 306**

25.     Section 306 declares that discriminatory state taxation of rail transportation property, or state taxation that results in discriminatory treatment of a common carrier by rail, constitutes an unreasonable and unjust discrimination against, and an undue burden upon interstate commerce.

26.     Section 306, prohibits a state, a political subdivision of a state, or any governmental entity or person acting on behalf of such state or subdivision from:  (a) assessing rail transportation property at a higher ratio of assessed value to true market value than the ratio applicable to all other commercial and industrial property in the same assessment jurisdiction; (b) levying or collecting any property tax on rail transportation property at a higher ratio of assessed value to true market value than the ratio applicable to other commercial and industrial property in the same assessment jurisdiction; (c) levying or collecting any property tax on rail transportation property at a tax rate higher than the rate generally applicable to commercial and industrial property in the same assessment jurisdiction; and (d) imposing any other tax which results in discriminatory treatment of a common carrier by railroad subject to this part.

27.     Section 306 defines "transportation property" to mean "transportation property, as defined in the regulations of the Interstate Commerce Commission, which is owned or used by a common carrier by railroad subject to this part or which is owned by the National Railroad Passenger Corporation".

28.     Section 306 defines "commercial and industrial property" to mean "all property, real or personal, other than transportation property and land used primarily for agricultural purposes or primarily for the purpose of growing timber, which is devoted to a commercial or industrial use and which is subject to a property tax levy".

## PLAINTIFFS' SECTION 306 CLAIMS

## COUNT I

29.     Plaintiffs restate by reference the allegations of paragraphs 1 through 28 of this complaint.

30.     All real and tangible personal property used by plaintiffs in their railroad operations in Kansas subject to appraisal and assessment by the Director constitutes "rail transportation property" within the meaning of Section 306.

31.     The apportioned assessed value of plaintiffs' rail transportation property, as determined by the Director for purposes of the 2020 assessment year (*i.e.*, as of January 1, 2020), includes the value of plaintiffs' rail transportation personal property.

32.     For 2020, approximately 32.77% of BNSF's rail transportation property was comprised of personal property.

33.     For 2020, approximately 11.82% of Cimarron Valley's rail transportation property was comprised of personal property.

34.     For 2020, approximately 32.86% of K&O's rail transportation property was comprised of personal property.

35.     For 2020, approximately 27.72% of KCTR's rail transportation property was comprised of personal property.

36.     For 2020, approximately 10.23% of Kyle's rail transportation property was comprised of personal property.

37.     For 2020, approximately 8.74% of NK&CR's rail transportation property was comprised of personal property.

38.     For 2020, approximately 34.08% of Norfolk's rail transportation property was comprised of personal property.

39.     For 2020, approximately 25.67% of SK&OK's rail transportation property was comprised of personal property.

40.     For 2020, approximately 33.23% of KCS's rail transportation property was comprised of personal property.

41.     For 2020, approximately 34.63% of UP's and SJ&GR's, rail transportation property (which is assessed as a combined unit by the Director) was comprised of personal property.

42.     For 2020, approximately 0.00% of WUTR's rail transportation property was comprised of personal property.

43.     As a result of the defendants' final assessments, the ratio of assessed value to true market value of plaintiffs' rail transportation personal property in Kansas for the 2020 tax year is no less than 25%.

44.     While the defendants have assessed plaintiff railroads' rail transportation personal property at no less than 25% of true market value, other commercial and industrial personal property in Kansas has been assessed at no more than 10% of true market value for the 2020 year.

45.     The ratio of assessed value to true market value of each railroad's rail transportation personal property in the State of Kansas for the 2020 tax year exceeds the ratio applicable to other commercial and industrial personal property by more than 5%.

46.     The defendants' failure and refusal to reduce each railroad's rail transportation personal property ratio of assessed value to true market value to not more than 10%, results in a ratio of assessed value to true market value for each railroad's rail transportation personal property that is far in excess of the ratio of assessed value to true market value of other commercial and industrial personal property in the State of Kansas for the 2020 tax year and violates Section 306.

47.     Unless restrained and enjoined by this Court, the Director will, on or before June 1, 2020, apportion and certify discriminatory assessments of plaintiffs' rail transportation personal property to each of the various counties and taxing units in Kansas in which plaintiffs operate in violation of Section 306.

48.     Plaintiffs are entitled to a declaratory judgment, order, and decree of this Court determining the proper ratio of assessed value to true market value that may be legally applied to

plaintiffs' rail transportation personal property for 2020 and an injunction enjoining the defendants from assessing or collecting taxes in excess thereof. Plaintiffs should not be required to pay such taxes until the lawful taxes have been determined.

## COUNT II

49.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 48 of this complaint.

50.     The apportioned assessed value of plaintiffs' rail transportation property, as determined by the Director for purposes of the 2020 assessment year (*i.e.* as of January 1, 2020), includes the value of plaintiffs' rail transportation real property.

51.     For 2020, approximately 67.23% of BNSF's rail transportation property was comprised of real property.

52.     For 2020, approximately 88.18% of Cimarron Valley's rail transportation property was comprised of real property.

53.     For 2020, approximately 67.14% of K&O's rail transportation property was comprised of real property.

54.     For 2020, approximately 72.28% of KCTR's rail transportation property was comprised of real property.

55.     For 2020, approximately 89.77% of Kyle's rail transportation property was comprised of real property.

56.     For 2020, approximately 91.26% of NK&CR's rail transportation property was comprised of real property.

57.     For 2020, approximately 65.92% of Norfolk's rail transportation property was comprised of real property.

58.     For 2020, approximately 74.33% of SK&OK's rail transportation property was comprised of real property.

59.    For 2020, approximately 66.77% of KCS's rail transportation property was comprised of real property.

60.    For 2020, approximately 65.37% of UP's and SJ&GR's rail transportation property (which is assessed as a combined unit by the Director) was comprised of real property.

61.    For 2020, approximately 100.00% of WUTR's rail transportation property was comprised of real property.

62.    As a result of the defendants' final assessments, the ratio of assessed value to true market value of plaintiffs' rail transportation real property in Kansas for the 2020 tax year is no less than 25%.

63.    While the defendants have assessed plaintiff railroads' rail transportation real property at no less than 25% of true market value, other commercial and industrial real property in Kansas has been assessed at no more than 15.82% of the true market value for the 2020 tax year.

64.    The ratio of assessed value to true market value of each railroad's rail transportation real property in the State of Kansas for the 2020 tax year exceeds the ratio applicable to other commercial and industrial real property by more than 5%.

65.    The defendants' failure and refusal to reduce each railroad's rail transportation real property ratio of assessed value to true market value to not more than 15.82% results in a ratio of assessed value to true market value for each railroad's rail transportation real property that is far in excess of the ratio of assessed value to true market value of other commercial and industrial real property in the State of Kansas for the 2020 tax year and violates Section 306.

66.    Unless restrained and enjoined by the Court, the Director will, on or before June 1, 2020, apportion and certify discriminatory assessments of plaintiffs' rail transportation real property to each of the various counties and taxing units in Kansas in which plaintiffs operate in violation of Section 306.

67.    Plaintiffs are entitled to a declaratory judgment, order, and decree of this Court determining the proper ratio of assessed value to true market value that may be legally applied to

plaintiffs' rail transportation real property for 2020 and an injunction enjoining the defendants from assessing or collecting taxes in excess thereof.  Plaintiffs should not be required to pay such taxes until the lawful taxes have been determined.

WHEREFORE, the plaintiffs pray that this Court:

a. Determine and decree the proper ratio of assessed value to true market value to be applied to plaintiffs' rail transportation personal property above which the defendants were and are prohibited from assessing plaintiffs' railroad transportation personal property for the 2020 tax year; and,

b. Determine and decree the proper ratio of assessed value to true market value to be applied to plaintiffs' rail transportation real property above which the defendants were and are prohibited from assessing plaintiffs' railroad transportation real property for the 2020 tax year; and,

c. Enjoin the defendants and all those acting in concert or participating with them, both preliminarily and permanently, from assessing, certifying, levying, or collecting any property tax from plaintiffs on the value of their rail transportation property (real and personal) for the 2020 assessment year in excess of the proper ratio of assessed value to true market value that may be legally applied; and,

d. Issue all necessary and proper prohibitory and mandatory restraining orders and injunctions to effectuate the findings of the Court; and

e. Award plaintiffs their costs and such other relief as will effectuate the provisions of Section 306 and grant plaintiffs full relief.


Dated this 21st day of May, 2020.

Submitted by,


*/s/ Alan F. Alderson*
Alan F. Alderson, No. 8390
ALDERSON, ALDERSON,
CONKLIN, CROW & SLINKARD, L.L.C.
2101 SW 21st Street
Topeka, Kansas  66604
e-mail:  alana@aldersonlaw.com
(785) 232-0753; fax (785) 232-1866
Attorney
*for* BNSF RAILWAY COMPANY,
CIMARRON VALLEY RAILROAD, L.C.
KANSAS & OKLAHOMA RAILROAD, L.L.C..
KANSAS CITY TERMINAL RAILWAY COMPANY,
KANSAS CITY SOUTHERN RAILWAY COMPANY,
KYLE RAILROAD COMPANY,
NEBRASKA, KANSAS & COLORADO RAILNET,
NORFOLK SOUTHERN RAILWAY COMPANY,
SOUTH KANSAS & OKLAHOMA RAILROAD, L.L.C.,
THE ST. JOSEPH & GRAND ISLAND RAILWAY
COMPANY, UNION PACIFIC/MISSOURI PACIFIC
RAILROAD COMPANY; and WICHITA UNION
TERMINAL RAILWAY COMPANY